FILED & JUDGMENT ENTERED
Steven T. Salata

Jul 11 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **CAROLINA INTERNET, LTD.,** | ) | Case No. 11-32461 |
| | ) | |
| Debtor. | ) | |

### ORDER DENYING MOTION TO AUTHORIZE PAYMENT OF INCOME TAXES

This cause came before the Court on May 29, 2012, upon the *Motion to Authorize Payment of Income Taxes* and the *Amended Motion to Authorize Payment of Income Taxes* (jointly referred to herein as the "Tax Motion"), filed by Carolina Internet, Ltd. (the "Debtor"), [Docs. 252, 255], and the objections thereto filed by the Official Committee of Unsecured Creditors of Carolina Internet, Ltd. (the "Committee") and tw telecom holdings inc. (tw telecom), [Docs. 288, 289]. Richard M. Mitchell, Esq. appeared for the Debtor; Richard S. Wright, Esq. appeared for the Committee; Ashley A. Edwards, Esq. and Andrew H. Sherman, Esq. appeared on behalf of tw telecom. Based on the record in this proceeding, the evidence presented, and the arguments of counsel, the Court makes the following:

MWH: 10128.001; 00004334.1

# FINDINGS OF FACT[1]

1. The Debtor is a provider of internet bandwidth and co-location services from leased premises in Charlotte, North Carolina. Approximately sixty-five percent (65%) of the Debtor's revenue is derived from a single customer – Data Conversions, Inc.

2. The Debtor's shareholders are Michael C. White (53.3%), Morgan A. Miskell (23.75%), Frank T. Horan (17.95%), and Charles A. Jones (5%).

3. On September 23, 2011, the Debtor filed a voluntary petition for relief in this Court under Chapter 11 of the United States Bankruptcy Code.

4. According to the Schedules filed in this case, the Debtor was substantially insolvent as of the Petition Date. The Debtor's Schedules reflect total assets of $1,578,285.58 and total debts equal to $9,551,592.25.

5. According to the Debtor's federal income tax returns, the Debtor has also been insolvent since at least the beginning of 2009. Schedule L of the Debtor's federal tax return for 2009 reflects that at the beginning of 2009: (i) the Debtor's total assets equaled $3,556,398.00, (ii) the Debtor's total liabilities equaled $3,580,398.00, and (iii) that shareholders' equity was a negative $24,000.00.

6. By the end of 2009, the Debtor's liabilities exceeded its assets by more than $2,700,000. The Debtor reported that by the end of 2009, the value of its shareholders' equity

---

[1] These findings support the ruling in the present dispute, which is but one of many between this Debtor and its creditors. In particular, the insolvency findings were made upon a relatively limited evidentiary record in an ancillary matter in this Chapter 11 case. Throughout, the Debtor has maintained that it was solvent at the petition date. The Committee believes the opposite. A full blown solvency hearing has not been held and if it had, it would necessarily be speculative. Solvency in this case turns largely on whether tw telecom's $3,222,207.72 default judgment against the Debtor stands up on appeal (presently pending before the Tenth Circuit) and if not, what if anything is owing to tw telecom. This insolvency finding should not be assumed to be law of the case for future matters.

was a negative $2,796,000. Notwithstanding that it was insolvent throughout 2009, the Debtor made distributions to its shareholders totaling $1,779,370.00.

7.   The Debtor followed a similar pattern of making substantial distributions to its shareholders while the company was insolvent in 2010. For example, the Debtor's 2010 federal tax return shows that the Debtor's shareholders' equity was in excess of negative $2,700,000.00 at all times during that year. Regardless of its continued insolvency, the Debtor made distributions to its shareholders in 2010 totaling $1,270,657.00.

8.   This pattern continued in 2011, both pre-petition and post-petition, as the Debtor has already made distributions to its shareholders in 2011 totaling $307,500.00. Those distributions can be summarized as follows:

| Shareholder | Pre-Petition | Post-Petition | Total |
| --- | --- | --- | --- |
| Michael White | $139,913.81 | $23,985.23 | $163,899.04 |
| Morgan Miskell | $62,343.75 | $10,687.50 | $73,031.25 |
| Frank Horan | $47,117.44 | $8,077.27 | $55,194.71 |
| Charles Jones | $13,125.00 | $2,250.00 | $15,375.00 |
| **Total:** | **$262,500** | **$45,000** | **$307,500** |

9.   In connection with a previous motion for authority to use cash collateral, the Debtor requested that the Court approve distributions to its shareholders of $45,000 per month to pay subchapter S distributions. While the Court rejected the Debtor's blanket request for authority to make monthly distributions to its shareholders, the Court did authorize the Debtor to make a single distribution in the amount of $45,000 specifically for "Sub S Tax distributions."

10. The Debtor's monthly operating report for October 2011 reflects the payment of the $45,000.00 subchapter S distribution authorized by the Court.

11. In the Tax Motion, the Debtor asks the Court to approve an additional post-petition distribution to shareholders in the amount of $44,578.42 to pay the personal tax liabilities of its shareholders to the North Carolina Department of Revenue ("NCDOR"). The Debtor asserts that it must file a composite tax return and make estimated tax payments on behalf of its shareholders pursuant to N.C. Gen. Stat. § 105-131.7(b), and that failure to do so will result in violation of the federal "one class of stock rule" and cause the loss of its sub-chapter S corporation status.

12. The Debtor has not filed composite returns under G.S. § 105-131.7 in prior years.

13. As of the hearing on the Tax Motion, the Debtor had not prepared its 2011 state and federal income tax returns. However, the Debtor concedes that it will incur essentially no federal income taxes for 2011, because it claimed accelerated, bonus depreciation on the purchase of equipment.

## CONCLUSIONS OF LAW

14. The Tax Motion should be denied.

15. As a practical matter, the Court has already approved, and the Debtor has already made, post-petition distributions to shareholders sufficient to pay the taxes allegedly due and owing to the NCDOR. The Debtor's shareholders have received $45,000.00 in distributions during the Chapter 11 case, while the taxes allegedly due to the NCDOR are $44,578.42.

16. The Debtor also made pre-petition distributions in 2011 to its shareholders totaling $262,500.00, which should be available to pay the 2011 taxes owed to NCDOR

(inasmuch as the Tax Motion admits that the shareholders have no federal income tax liability for the year in question). The Debtor also fails to account for the approximately $3,000,000.00 in distributions that it made to shareholders in years 2009 and 2010, while the company was insolvent.

17.     Additionally, the Debtor's argument that it is required to file a composite tax return and to make estimated tax payments on behalf of either its resident or nonresident shareholders, or lose its subchapter S status, is inaccurate. The applicable North Carolina statute provides:

> The Department [of Revenue] shall *permit* S Corporations to file composite returns and to make composite payments of tax on behalf of some or all nonresident shareholders. The Department may *permit* S Corporations to file composite returns and make composite payments of tax on behalf of some or all resident shareholders.

N.C. Gen. Stat. § 105-131.7(b) (emphasis added).

18.     The language of the statute is plainly discretionary. An S corporation may file composite returns and pay the taxes on behalf of its nonresident (and resident) shareholders *if it so chooses*. In the absence of such an election, the shareholders remain solely and personally liable for the payment of income taxes to the NCDOR. Federal treasury regulations also demonstrate that such elective state statutes do not implicate the "one-class-of-stock" rule under the Internal Revenue Code. 26 CFR 1.1361-1.

19.     The requested distribution would also contravene the Bankruptcy Code's priority scheme, by distributing property of the estate to the Debtor's equity security holders while the Debtor has substantial unpaid general unsecured creditors of a higher priority. *See* 11 U.S.C. §§ 507, 1129(b)(2)(B)(ii); *see also In re Smith*, 357 B.R. 60, 68 (Bankr. M.D.N.C. 2006) (stating that "[i]n other words, creditors may insist on priority of payment: secured creditors must be paid

in full before unsecured creditors retain any interest, and unsecured creditors must be paid off before equity holders retain an interest… This principle is commonly referred to as the absolute priority rule.").

20.   Finally, the proposed filing of a composite return on behalf of its shareholders is inconsistent with the company's past practice.  The Debtor has not historically filed composite returns, or made correlating estimated tax payments, on behalf of its owners.  Rather, the Debtor has filed informational returns pursuant to N.C.G.S. §105-131.7(a), and its shareholders have paid their *pro rata* share of the taxes personally pursuant to N.C.G.S. §105-131.1(b).

21.   A significant body of case law illustrates that income taxes of a "pass through" entity, such as an S corporation or a limited liability company, are liabilities of that entity's shareholders.  The filing of a bankruptcy case by the corporation does not alter its tax status or that of its shareholders.  *See Pants Rack, Inc. v. U.S.*, 669 F.2d 198 (4th Cir. 1982); *Mourad v. Comm'r*, 387 F.3d 27 (1st Cir. 2004); *Official Comm. Of Unsecured Creditors of Forman Enters. v. Forman (In re Forman Enters.)*, 281 B.R. 600 (Bankr. W.D. Pa. 2002); *Hanrahan v. Walterman (In re Walterman Implement, Inc.)*, 2006 Bankr. LEXIS 921 (Bankr. N.D. Iowa May 22, 2006).

22.   The owners' decision to have the Debtor treated as an S corporation, enjoying limited liability while avoiding double taxation, comes with benefits and burdens.  *See Gilliam v. Speier (In re KRSM Props.)*, 318 B.R. 712 (B.A.P. 9th Cir. 2004).  The Debtor's proposal would allow its shareholders to avoid those burdens at the expense of the company's creditors, without any factual or legal basis to do so.

**THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that** the Debtor's *Motion to Authorize Payment of Income Taxes* and the *Amended Motion to Authorize Payment of Income Taxes* are hereby **DENIED**.

| | |
|---|---|
| *This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of this Order.* | *United States Bankruptcy Court* |